CAPPEAU's Bail *vs.* MIDDLETON & BAKER.—June, 1827.

A writ of *scire facias* against *special bail,* which does not recite the issue and return of a *ca. sa.* is sufficient upon issue joined on the plea of *nul tiel record.*

To such writ, the bail having pleaded the death of his principal before any *ca. sa.* returned, the plaintiff in his replication traversed that fact, and tendered an issue to the country. Its conclusion was technically right; an issue joined on such pleadings, is not an immaterial one, the whole mat-ter in controversy being decided by it.

The omission of the plaintiff in his replication to set out the *ca. sa.* and re-turn, in proceedings against bail, is mere informality in pleading, bad only on demurrer, and cured by verdict.

The power conferred on a commissioner to take testimony is strictly per-sonal. Especial confidence is presumed to be reposed in the person ap-pointed, and he cannot delegate his authority.

APPEAL from *Baltimore* County Court. On the 8th of May 1818 a writ of *scire facias* issued out of *Baltimore* county court, on a recognizance of special bail entered into in the usual form in that court at September term 1816, by *Joseph Cappeau,* (the appellant,) for *Charles Cappeau,* at the suit of *Middle-ton* and *Baker,* (the appellees,) in a plea of trespass on the case, &c. by the said *Middleton* and *Baker* against the said *Charles Cappeau,* in the same court prosecuted, &c. The writ of *scire facias* then stated, that in the said court in Sep-tember 1817, *Middleton* and *Baker* recovered judgment against *Charles Cappeau* for the sum of, &c. Nevertheless. the said *C. Cappeau* the damages, &c. to the said *Middleton* and *Baker* had not satisfied, nor his body in execution of such judgment to the public prison of the said county had rendered, &c. Where-fore the said *Middleton* and *Baker* had besought a proper reme-

dy, &c. Command was therefore given to the sheriff to give notice to *Joseph Cappeau*, in the usual form of such writs of *scire facias.* The defendant, (the special bail,) appeared, and pleaded, (after praying oyer of the writ of *scire facias*,) 1. *Nul tiel record* of recognizance. 2. That before the suing out of the writ of *scire facias*, and before the return of any writ of *capias ad satisfaciendum* issued on the said judgment against the said *Charles Cappeau*, to wit, on, &c. the said *Charles* died, to wit, at *Saint Domingo*, &c. To the *first* plea the plaintiffs replied *habetur tale recordum* of recognizance, and issue was joined to the court upon the record. To the *second* plea the plaintiffs replied, that *Charles Cappeau* did not die before the return of the writ of *capias ad satisfaciendum* issued against him upon the said judgment; and tendered an issue to the country, which was joined in by the defendant. Upon the *first* issue, the county court gave judgment for the plaintiffs, that there was such record, &c.

At the trial of the issue joined on the *second* plea, the defendant offered in evidence a commission issued out of *Baltimore* county court, in the usual form, to *Robert Lavens* and *Pelegrin Vidal* of *Mayaguez*, commissioners, for taking the testimony of witnesses in the said action, by them or either of them, &c. Also the translations, (made by consent of the parties,) of certain depositions in the *Spanish* language, returned with the said commission. It appeared by the return of *Robert Lavens*, the commissioner who acted, that he addressed a request to the governor, judge or the proper officer of the place, to cause the commission, which was in *English*, to be translated into the *Spanish* language by the public interpreter of the town of *Yagues*, where the commissioner resided. This was complied with. The commissioner then addressed another request to the same person, in which, stating himself to be commissioner, &c. he requested that he would be pleased to admit a declaration of witnesses, and to bind under oath those whom he the commissioner should present, to answer certain interrogatories which might be propounded according to the usual form. He then set forth the interrogatories. And that these being done, to let a testimony of these proceedings, corroborated by the signature of two or three notaries public, be drawn,

&c. This request was granted, with directions, that all the witnesses presented swear and declare according to the form and manner requested, &c. It was then stated that in the town of *Mayaguez*, on the 2d of August 1824, "the party requesting the declaration, presented as a witness, *Joseph Lenner*, a resident of this place. The *Alcade* took his oath before me, which he performed according to law, and under which promised to tell the truth in every thing which he would be interrogated; and being requested to answer the preceding interrogatories; to the *first*, he said," &c. "He signed it with the *Alcade*, before me. I attest, *Arroyo.* (Signed) *Aldiexi.* (Signed) *Lenner.* Before me, (signed) *Peter Arroyo*, Notary Public." "On the same day I notified, and delivered these proceedings to the party concerned, which I attested. Signed *Arroyo.*" The testimony of another witness was taken in a similar manner. The commissioner who acted, then certified to *Baltimore* county court, that *P. Vidal* and himself, being charged and named as commissioners, having to take an oath prescribed in the commission, before a person authorised to administer the same, presented themselves to the proper authority for that purpose, and were informed that it was impossible to act *extra*-judicially in this case, so as to effect the commission according to the tenor of the oath. That before they could cite any witness in this case, it was necessary to make a representation to the judge for permission to have their power translated by a public interpreter, by which he could be instructed with the nature of the commission and according to law execute the same. That had they, or either of them, being charged simply to take information from persons acquainted in the affairs, it might have been fully and satisfactorily executed; but to have an oath, prescribed by the laws of a court in a foreign country, to be administered and subscribed to by a person in another, was a thing that the judge of that place did not, nor would not understand, though the commissioners explained to him the nature of the commission, and said he would not cite the witnesses, who lived at a distance, except it was notarially and publicly done, &c. The plaintiffs objected to the admission of the said evidence; and insisted that the said depositions ought not to be read in evidence. And the Court [*Archer,*

Ch. J. and *Ward,* A. J.] were of opinion that the said depositions ought not to be admitted in evidence. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued at the last June term before BUCHANAN, Ch. J. and MARTIN, STEPHEN, and DORSEY, J.

*Scott,* for the Appellant, contended, 1. That it did not appear by the record, that a writ of *capias ad satisfaciendum* against *Charles Cappeau,* the principal, was returned *non est inventus* before the issuing of the writ of *scire facias* against *Joseph Cappeau,* his special bail. 2. That the court below erred in refusing to permit the evidence contained in the bill of exceptions, to go to the jury.

1. The replication to the *second* plea concludes to the country, instead of concluding with a verification. The replication does not state that a *ca. sa.* had been issued, and was returned *non est.* The issue joined was therefore an immaterial issue, and a repleader should have been awarded. He cited 1 *Bac. Ab.* tit. *Bail,* 342, 343. *Filewood vs. Popplewell,* 2 *Wils.* 65. *Chandler vs. Roberts, et al. bail of White,* 1 *Dougl.* 58. *Tidd's Pr.* 644, 645. *Henderson vs. Withy,* 2 *T. R.* 576.

2. The testimony returned with the commission should have been permitted to go in evidence. 1 *Phill. Evid.* 272, (note a,) 273. *Winthrop vs. Union Insurance Company,* 1 *Condy's Marsh.* 707, (note.)

*Finley,* for the Appellees. On the *first point,* cited *Williams vs. Vaugh, Cro. Jac.* 97. 1 *Chitty's Plead.* 545, (547.)

On the *second point,* he referred to the act of 1773, *ch.* 7, *s.* 7. 1 *Harr. Ch. Pr.* 324, 326. *Rex vs. Croke,* 1 *Cowp.* 26. *Boreing's Lessee vs. Singery,* 2 *Harr. & Johns.* 459. As to the proof of foreign laws, and the manner of executing commissions issued to foreign countries to take testimony, he cited *Mostyn vs. Fabrigas,* 1 *Cowp.* 174. *Church vs. Hubbart,* 2 *Cranch,* 187, 236, 238. *Baptiste vs. De Volunbrun,* 5 *Harr. & Johns.* 98. *De Sobry vs. De Laistre,* 2 *Harr. & Johns.* 229, 230. *Boreing's Lessee vs. Singery, Ib.* 459. *Pancoast vs. Addison,* 1 *Harr. & Johns.* 350. He contended, that the

commissioners could not delegate their powers, nor could their powers be transferred to others—it was a special confidence reposed in them. *Bailis vs. Cochran,* 2 *Johns. Rep.* 417.

*Curia adv. vult.*

DORSEY, J. at this term delivered the opinion of the court. The appellees having sued out a *scire facias* against the appellant, as special bail of *Charles Cappeau,* in the usual form, without setting out the issuing and return of *ca. sa.* the appellant pleaded *nul tiel record;* and also that his principal died. before any *ca. sa.* returned. On the *first* plea an issue was joined, and judgment given thereon by the court against the appellant. The appellees in their replication simply trraversed the fact, alleged in the *second* plea, (without setting. forth the *ca. sa.* which had issued and been returned, the time when, &c.) and tendered an issue to the country, in which the appellant joined. The verdict and judgment being rendered against the appellant, he seeks a reversal by this court. *First.* On the ground that the appellees' replication to the *second* plea concludes to the country, instead of concluding with a verification, which it should have done. If this objection were well founded, it cannot avail the appellant here; his remedy should have been by demurrer in the court below; the defect, if it existed, is cured by verdict. But there is no such defect as that complained of. The replication contains no new matter, which the appellees had a right to demand an opportunity of answering; but is a direct and naked denial of all the matters contained in the plea, and could technically conclude in no other way than by tendering an issue to the country.

The *second* ground of reversal is, that this replication is erroneous in not setting out the *ca. sa,* with the time of its issuing and return, and that the issue joined upon it is an immaterial issue; and that instead of a final judgment upon the verdict, a repleader should have been awarded. That *surely* cannot be an immaterial issue which decides the whole matters in controversy between the parties. Such was the issue to which exceptions are now taken. The issue being material, no judgment of repleader could have been given. Admitting, that upon the authority of the case of *Fortune vs. Manucaptors of*

*Davis, Carth.* 8, recognised by Justice *Buller* in *Chandler vs. Roberts and another bail of White,* 1 *Dougl.* 58, the replication ought to have set out the *ca. sa.* and return, (although a different precedent appears in 2 *Harr. Ent.* 472); yet the omission to do so, in the present case, is mere informality in pleading, which is only bad on demurrer. But if it be matter of substance, it is remedied by the verdict, which the jury could not possibly have given, unless the issuing and return of the *ca. sa.* had been in evidence before them. And by this form of the issue, the rights of the appellant, though somewhat modified, in truth sustain no diminution. If the *ca. sa,* and its return, had been formally stated in the replication, the appellant might, by a plea of *nul tiel record,* have put their verity to issue before the court. He accomplishes, in effect, the same object, when on the trial he objects to their going in evidence to the jury. The question presented for the decision of the court, becomes in both cases precisely the same.

The objections to the pleadings being disposed of, it only remains to be inquired, whether the court erred in rejecting the testimony returned with the commission? We think they did not. The power conferred on a commissioner to take testimony, is strictly personal, and on its faithful execution the most important interests of the parties may depend. To ensure such fidelity, oaths, to be taken by the commissioner, and the person by him to be employed as clerk, are annexed to the commission. Especial confidence also is presumed to be reposed in the person appointed. Upon no principle of reason or law, therefore, can the testimony returned with the commission be admissible. The person by whom it was taken held no share in the confidence of the parties or of the court; he received from them no delegation of authority; and even if he had, having failed to take the requisite oath, his proceedings are a nullity. For this singular attempt to transfer a strictly personal trust, the record in this case furnishes neither solution nor apology.

JUDGMENT AFFIRMED, *(a.)*

*(a)* If the government of the place where a commission has issued to take testimony, will not permit it to be executed, the court here will issue *Letters Rogatory* for the purpose of obtaining testimony. See 1 *Peter's C. C, Reports,* 236, and the form of such letters.